# Carlisle *v.* Carlisle.

*Bill in Equity by Purchaser, for Specific Performance of Contract for Sale of Land.*

| 77 | 339 |
|----|-----|
| 94 | 191 |
| 77 | 339 |
| 101 | 257 |
| 77 | 339 |
| 108 | 652 |

1. *Specific performance of agreement for sale of land.*—To authorize the specific performance of an agreement for the sale of land, which rests largely in judicial discretion, and depends upon an equitable consideration of the particular circumstances of each case, the contract must be founded on a valuable consideration, and must be just, fair and reasonable; must not have originated in mistake, surprise, violation of confidence, breach of trust, or advantage of condition, nor been obtained by unconscientious or unfair methods; must be reasonably certain in respect to the subject-matter, the terms and stipulations, and its performance must not work hardship or injustice.

2. *Same ; allegation and proof of terms.*—The terms of the contract must be definitely alleged, and must be established as alleged by clear and satisfactory proof; and if any of the terms are left in doubt and uncertainty, or there is a variance between the allegations and the proof as to any of the terms, a specific performance will not be decreed.

3. *Same ; entire and partial performance.*—Partial performance of an entire contract will not be decreed; hence, where there are several joint vendors, a specific performance will not be decreed against one only, the others not being parties to the bill, and the stipulations of the contract between them and the complainant never having been performed.

4. *Same ; tender, or offer to perform.*—When the stipulations of the contract are mutual and dependent, simultaneous performance by both parties being contemplated and intended, a tender, or offer to perform by the complainant, must generally precede the commencement of the suit; and in all cases, whether such precedent tender be necessary or not, he must aver in his bill an offer, readiness and willingness to perform, submitting himself to the orders and directions of the court.

5. *Same ; hardship or injustice to third person.*—Where the contract sought to be enforced was between the children and devisees of a decedent, for the purchase of the family homestead by the complainant, and the widow was.induced by him and the defendant, who were trustees for

[Carlisle v. Carlisle.]

her under the will, not to dissent from the will, but to assent to the sale, and to accept the provision thereby made for her, the complainant promising that she should continue to live at the homestead with him, and be treated with kindness and affection; while this promise may not have been intended as a stipulation of the contract, it is an equitable consideration which the court will not disregard; and its performance having become impracticable, by reason of the estrangement which has since arisen between the complainant and the widow, growing out of the contract, a specific performance will not be decreed, since it might work hardship or injustice to her.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. JOHN A. FOSTER.

The bill in this case was filed on the 30th January, 1884, by Thomas J. Carlisle, against M. N. Carlisle and his wife, Mrs. E. B. Carlisle; and sought the specific execution of a contract by which the complainant agreed to purchase, and the said M. N. Carlisle and others agreed to sell and convey to him, their respective undivided interests in a certain tract of land, which constituted the family homestead of their deceased father, Green W. Carlisle, and in which they and the surviving widow were interested as legatees and devisees under his will. The terms of this contract were thus stated in the bill: (Par. 3.) "Early in the fall of the year 1882, all of said legatees, being over twenty-one years of age, and otherwise competent to contract, in order to bring about a speedy settlement of said estate, and to avoid the delay and expense of a regular administration under said will, agreed to sell to your orator the land belonging to said estate, upon the following terms: Your orator was to pay one half of the purchase-money in cash. and the balance to be secured by a mortgage or mortgages on the respective (?) on twelve months time, and was to pay $12.50 per acre for said lands; and said legatees were to execute to him absolute conveyances to their respective interests in said land, which contained 278 acres. The said fee-simple titles were to be executed to your orator upon said cash payment of one half of the purchase-money being made. At the time said contract was made, your orator was in the possession of said land, and said possession was recognized and acquiesced in by all of said legatees; and your orator is now in the possession of said land, and has been ever since the making of said contract of purchase." (Par. 4.) "Under the last will and testament of said G. W. Carlisle, Mary E. Carlisle, his widow, was bequeathed a special legacy, consisting of $500 in money and a horse and buggy, and also a child's portion of the estate after deducting the special legacy; and on the sale of said lands by said legatees, or about that time, it was agreed by your orator and said M. N. Carlisle, who were then acting as executors and trustees under said decedent's will, to allow the said widow, their

[Carlisle v. Carlisle.]

mother, $700 in lieu of said special bequest, and the same was to remain secured by mortgage to her on said land, to be given by your orator, until her death, and he was to pay the annual interest thereon to her until said time; and at the time when said mortgage was to become payable, your orator was to pay off and discharge the same, by paying $100 to each of the other six legatees, retaining the same amount ($100) for himself. Your orator has been informed and believes, and upon such information and belief states, that all of the other legatees approve of and confirm the agreement last above mentioned and set forth."

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is now assigned as error. The facts of the case, so far as material to the points here decided, appear in the opinion of the court, and any further statement is unnecessary.

GARDNER & WILEY, and W. H. PARKS, for appellant.

N. W. GRIFFIN, contra.

CLOPTON, J.—The equitable remedy of specific performance of agreements for the sale of lands rests largely in judicial discretion, directed and regulated by defined rules. Well settled elements and incidents are requisite to granting relief; but whether relief shall be granted depends upon an equitable consideration of the particular circumstances of each case. The contract must be just, fair, and reasonable; must not have originated in mistake, or surprise, or violation of confidence, or breach of trust, or advantage of condition, nor been obtained by any unconscientious or unfair methods; must be reasonably certain in respect to the subject-matter, the terms, and stipulations; must be founded on a valuable consideration, and its performance not work hardship or injustice. —*Moon v. Crowder,* 72 Ala. 79.

That there was an agreement to sell the lands to complainant, is not denied. The terms of the contract, as to which there does not appear to be any controversy, are as follows: The devisees under the will of G. W. Carlisle agreed to sell the lands to complainant for the sum of $3,475.00. Seven hundred dollars of the purchase-money were to be set apart for the widow of the testator, in lieu of a bequest to her of some personal property, and a pecuniary bequest of five hundred dollars, to be held by complainant and the defendant (M. N. Carlisle), in trust to loan, and pay her the interest thereon annually, and at her death to be divided among his heirs. The balance of the purchase-money was to be paid to the devisees,

eight in number, the widow being a devisee, in equal proportions; one-half to be paid cash, and the other half in twelve months. On the cash payments being made, the devisees were to make a deed to complainant, who was to execute a first mortgage on the lands to secure the amount set apart to the widow, and a mortgage to each of the devisees to secure the deferred payment.

2. The main disagreement is in reference to the mortgage to be given to the widow. The bill alleges, that the sum of seven hundred dollars, set apart for the widow, was to remain secured by mortgage on the lands, the interest to be paid annually, and the principal payable at her death; to be discharged by the payment of one hundred dollars to each of the other devisees, the complainant retaining the same amount for himself. In his testimony the complainant says, the sum was to remain secured by the land, so long as he paid the interest promptly. The widow claimed, that the aggregate of the amounts going to her was to be payable at twelve months from the sale, and that the mortgage should be executed accordingly. It is unnecessary for us to determine which version is correct. It is obvious there is a variance between the allegations of the bill, and the testimony of complainant, in respect to the terms of the mortgage, and between both of these and the evidence of the widow and M. N. Carlisle. The terms of the contract must be definitely alleged, and established, as alleged, by clear and satisfactory proof. If the evidence fails to prove the contract, or any of its terms are left in doubt or uncertainty, a specific performance will be refused.—*Moon v. Crowder*, 72 Ala. 79; *Aday v. Echols*, 18 Ala. 353. Doubt and uncertainty as to the terms of the contract arise on the evidence.

3. The sale was joint; the contract was an entirety. The delivery of the deed, and the delivery of the mortgages, evidently, were to be simultaneous acts. All the mortgages were to cover the entire lands. The cash payments have not been made, nor have the mortgages been executed, to several of the devisees; and no payment, as interest or otherwise, has been made to the widow. The evidence tends to show, there has been no delivery of the deed signed by the devisees, which is in the possession of the complainant, so as to give it effect as a conveyance, or by which the grantors parted with dominion over it. Holding the deed, and claiming it as a valid conveyance as to all except the defendants, a specific performance by one of the several vendors will not be decreed in favor of the complainant, in the absence of a performance of, or an offer to perform, the conditions required of him as to the other vendors. The court can not ignore the prospect of other and subsequent suits between the complainant and the other devisees,

[Carlisle v. Carlisle.]

and can not afford to encourage and promote a multiplicity of suits, by decreeing, in such case, specific performance by the defendants alone. There must be performance of the entire contract, or of no part thereof.

4. It is not essential, in all cases, that the complainant shall make an actual tender of performance, before bringing suit. Circumstances may render such tender impracticable, or unnecessary. When the stipulations are mutual and dependent —simultaneous performance by both contracting parties being intended—a tender should, ordinarily, precede the commencement of the suit. And whether a precedent tender is requisite, or may be dispensed with, the complainant should aver in his bill readiness and willingness, and an offer to perform, submitting himself to the orders and directions of the court, and entitling the defendant to a decree, whereby the rights of all the parties to the contract may be ascertained and protected. *Jenkins v. Harrison*, 66 Ala. 345; *Gentry v. Rogers*, 40 Ala. 442; *Bell v. Thompson*, 34 Ala. 633. It is true, that neither the widow nor the other devisees are made parties to the bill; but, on a bill of this character, the rights of parties to an entire and indivisible contract, though not parties to the suit, are considerations which a court of equity must regard in adjudicating the right of complainant to a specific performance by one party.—*Curran v. Water Works Co.*, 116 Mass. 90.

5. The widow had on several occasions expressed an intention to dissent from the will of her husband, and take her dower, moved by the natural sentiment to live and die at the homestead, where they had resided for many years, and where he died. She was dissuaded from this course, and induced to consent to the contract of sale, by the complainant and the defendant, M. N. Carlisle, by assurances that she could continue to live at the homestead with complainant, and be kindly and affectionately treated. They were her sons, executors of the will, and trustees of the pecuniary legacy in her favor. Twofold relations of trust and confidence existed. The mother has left the homestead, because of her son's treatment, as she alleges, but denied by him. Since then, the complainant has made no provision for her support, by paying, or offering to pay the interest, either on the pecuniary legacy, or on the amount set apart for her by the agreement. He has not discharged his duties as trustee. Without indicating any opinion on whom rests the fault, the deplorable estrangement between mother and son renders their living together impracticable, and this consideration is incapable of enforcement. While it may be that it was not expected to incorporate this incident of the contract in any written instrument, it constitutes an equitable

consideration, which, in a case like this, the court ought not to disregard, as it might work hardship and injustice.

We do not deem it necessary to consider the matters of personal difference between the complainant and the defendant, or to determine the validity at law of the contract. In our view of the case, the former are immaterial; and conceding that the agreement is binding, it does not necessarily follow that a specific performance will be decreed. There are contracts, which a court of equity will not specifically enforce, but leave the parties to their legal remedies.. A less strong case is sufficient to defeat, than is requisite to obtain specific performance.

Affirmed.