Delano D. and Joann B. Anderson appeal from a judgment granting William J. Wooten specific performance of a real estate sales contract, and incidental damages. Wooten cross-appeals, arguing that the damages awarded were inadequate.
In February 1986, the Andersons listed their approximately 180-acre farm with United Farm Agency, Inc., a real estate agency. In the fall of 1986, Danny Fulford, the broker with United Farm Agency who was handling the Anderson farm listing, began discussing with Wooten the purchase of the farm.
On November 12, 1986, after several proposals and counter proposals were made between the Andersons and Wooten, a sales contract with an attached addendum was signed by the parties, providing for a sale price of $264,346.76, with a down payment of $70,000. The remainder of the purchase price was to be financed by the Andersons at an interest rate of 8.63 per cent for 25 years. Wooten was to take possession of the farm by April 1, 1987. The addendum to the sales contract provided:
 "The owners (sellers) will continue to operate the farm and all income and expenses from the broiler operation will be prorated as of date of closing and will be split on a 50-50 basis.
 "Buyer is to keep structures insured as of date of closing and thereafter.
 "Buyer may have the use of detached garage after closing."
At Wooten's request, the following contingency clause was included in the sales contract:
 "This contract is contingent upon the buyer being approved by a chicken company to grow broilers under contract and also contingent upon the company approving the buyer to build two more broiler houses (16,000 capa./house). Also this contract is contingent upon the buyers' attorneys' aprroval [sic] after inspection of this contract."
The contract was duly executed by the parties and Wooten paid $5,000 as earnest money that was held by Mr. Fulford in escrow until the transaction was closed. The closing date was scheduled for November 26, 1986.
On November 14, 1986, Wooten's attorney advised the Andersons by letter that the closing was scheduled for November 26, 1986, and that:
 "The contingent provisions of the contract relating to Mr. Wooten being approved by the broiler company for the production of broilers and those relating to his being approved to build additional houses have been met and therefore that issue is no longer a contingent issue. Likewise, as Mr. Wooten's attorney, I have approved the contract and that contingent provision is therefore met and no longer a factor."
On November 18, 1986, six days after the contract was signed, the Andersons sent the following letter to Fulford:
 "We have had the contract (Deposit Receipt and Agreement of Sale) reviewed by two attorneys and we were advised that the following points are to be clarified.
 "(1) Buyer should not have the right to cut or remove any timber on the premses until mortgage has been satisfied.
 "(2) All peanut quota poundage (allotment) is to be retained by the seller and is not to go to the buyer.
 "(3) All existing fences are to remain on property and not to be removed while mortgage remains outstanding. Must be maintained.
 "(4) Buyer is to have no more than thirty days (30) to obtain a written approval from a chicken company to grow broilers under contract; and to obtain contract to build two (2) additional broiler houses and have contract approved by his attorney.
 "(5) In the event the broiler houses contain growing broilers at the time of delivery of possession to buyer, the seller is to receive one-half (1/2) of all income from the grow out.
 "(6) The buyer is to make no improvements on existing property beyond the amount of the initial down payment until *Page 42 
such time as the mortgage has been satisfied. However, existing improvements are to be maintained in a satisfactory condition. No structu[r]al alterations is to be made to house.
 "(7) Please prepare an addendum to the contract, and have same executed to Mr. Willima [sic] J. Wooten for his signature and forwarded to us for our signatures.
 "(8) Please provide us a zerox [sic] copy of the handwritten agreement on November 11, 1986.
 " '(9) Please provide us a zerox copy of the five hundred dollars ($500.00) paid as a binder on the execution of contract and the forty-five hundred dollars ($4,500.00) due on or before November 18, 1986.
 "(10) Written acceptance from the buyer's attorney is to be provided the seller.
 "(11) If buyer should decide to sell at a future date, real estate mortgage must be satisfied first with the original seller.
"(12) Proper insurance is to be maintained.
 "(13) Monthly payments are due on time; if more than thirty (30) days late full amount of principal becomes due.
 "(14) Seller retains first (1st) mortgage and no second (2nd) mortgage cannot be instituted until first (1st) mortgage is satisfied.
 "(15) a. A reputable mechanic to verify to working condition of farm equipment to sales agreement.
 "b. A reputable applaiance [sic] technician to verify to working condition of appliances and heating and cooling unit.
 "c. A reputable deep well driller to verify to well's working condition.
 "d. A reputable electrician and plumbler [sic] to verify condition of same.
 "e. A reputable agri-dealer to verify to working condition of chicken house equipment.
 "(16) The following is transfered [sic] and sold as is:
"1 Lawn mower
1 fuel tank
1 hoedigger
1 all mineral feeders troughs
1 slip scoop
1 blade
1 scratcher
1 spray rig
1 rota tiller [sic]
1 easy flow
1 bushhog
1 seed drill
1 3000 Ford tractor as is
2 cultivators as is
1 6-foot disk
1 breaking plow
 1 2-row burch planters all gas in gas tanks (tanks are owned by gas company)
 "(17) Buyer has right to make any improvements not stated if paid in cash.
 "As of March 31, 1987, no contest can be made at a future date as working condition of any equipment and appliances not transferred as is; also to any conditions of existing buildings on property.
 "Your prompt attention and clarification is to be appreciated so that we may deal with the matter.
"Sincerely,
"[signed] Delano D. Anderson
"[signed] Joann B. Anderson"
Wooten did not agree to all these modifications, and the closing did not take place as scheduled on November 26. It was rescheduled for December 1, 1986, but the Andersons failed to attend.
On December 3, 1986, Wooten filed this suit for specific performance and damages. The trial judge denied the Andersons' demand for a jury trial. After finding that Wooten had met all his obligations under the sales contract, the trial court ordered the Andersons to perform specifically under the terms of the contract as originally executed, and awarded Wooten $2,371.01 for incidental damages.
The Andersons appeal. Wooten filed a cross-appeal contesting the amount of the judgment for incidental damages. We affirm.
The Andersons contend that the contingency clause regarding Mr. Wooten's ability to obtain a contract with a poultry company to build two additional "broiler houses" *Page 43 
could not be waived unilaterally by Wooten because they allege that it benefited them by increasing their security under the mortgage. We disagree.
In LaGrave v. Jones, 336 So.2d 1330, 1332 (Ala. 1976), which involved a sales contract contingent upon the buyer's obtaining zoning approval, we held:
 "Whether such conditions are for the benefit of the buyer, or the seller, or both, must be determined under the facts and circumstances of each case and, of course, by the language of the agreement entered into between them."
After considering the language of the contingency, and the facts and circumstances surrounding this case, we are of the opinion that the trial court was justified in concluding from all of the evidence that the benefit of the contingency ran solely to Mr. Wooten. The contingency clause was inserted in the sales contract at Wooten's request to ensure that he would be able (1) to continue raising chickens under contract, and (2) to build two additional "broiler houses" to increase the productivity of the farm.
Fulford, the real estate broker, testified that he had handled several poultry farm transactions, and that the contingency clause was standard in all such transactions. He testified that the purpose of the contingency is to ensure that a poultry company will approve the buyer to grow chickens under contract, and, in this case, to assure Wooten that he would be able to expand the farm's poultry production.
Wooten testified that, after inquiring into the possibilities of renewing the Andersons' present contract with ConAgra, Inc., a poultry company, and the possibilities of obtaining a new contract with Showell Farms to build two additional "broiler houses," he was reasonably satisfied that he would be able to obtain the contracts, and, therefore, waived the condition.
William Holloway, a representative of Showell Farms who meets with poultry growers, testified that he told Wooten that Showell Farms was in the process of expanding its operation, and that it would be adding growers beginning in July 1987. Showell Farms did, in fact, add growers in an area near the Anderson farm. In answering a hypothetical question, presuming that the existing and new "broiler houses" met Showell Farms' specifications, Holloway testified that, in his opinion, Wooten would have been added as a contract grower within a couple of months after he was to take possession of the farm on April 1, 1987.
The evidence supports the trial court's finding that the contingency was intended for the buyer's benefit. In fact, the evidence is without dispute on the issue. The Andersons signed the contract and later consulted a lawyer. They attempted to add conditions to the agreement after it was signed and agreed upon. The buyer was not obligated to agree to these additional conditions. As to the additional chicken houses, the record supports the alternative conclusion reached by the trial court — that it was met, or that the buyer was free to waive it, or that it was solely for his benefit. The trial court heard the evidence and saw the witnesses. We have not been shown error to reverse.
In regard to the Andersons' argument that, due to the unilateral contingency, there was no mutuality of contract, we hold that the contingency in this case was a protective provision that does not render the contract void for want of mutuality. See, Industrial Machinery, Inc. v. CreativeDisplays, Inc., 344 So.2d 743 (Ala. 1977)
The Andersons contend that the trial court erred in granting incidental damages to Wooten in an equity action where specific performance was ordered.
The trial court, applying equitable principles, was authorized to make those findings. Suter v. ArrowheadInvestment Co., 387 So.2d 815 (Ala. 1980); Grayson v. Boyette,451 So.2d 798 (Ala. 1984).
The trial court granted Wooten, as incidental damages, one half of the profits from the poultry operation, amounting to $8,412.40, as specified in the sales contract; rent for the dwelling on the farm, amounting to $1,984; rent from the peanut allotment, *Page 44 
amounting to $992.82; and rent for the hay pasture, amounting to $433.81; totaling $11,823.03. The trial court found, however, that the Andersons were entitled to a set-off for accrued interest on the down payment, which totalled $9,452.02. The trial court then entered a judgment in favor of Wooten for incidental damages in the amount of $2,371.01. We find no error in this aspect of the trial court's judgment.
In his cross-appeal, Wooten contends that he is additionally entitled to out-of-pocket expenses, attorney fees for the period between July 24, 1987, and September 21, 1987, and accountant fees. We disagree, and we affirm the trial court's judgment on the cross-appeal.
It is within the sound judicial discretion of the trial judge to make findings regarding incidental damages when balancing the equities between the parties in specific performance cases. See, Wray v. Harris, 350 So.2d 409 (Ala. 1977). Absent a clear abuse of that discretion, or palpable error, such findings will not be disturbed on appeal.
In regard to Wooten's claims for loss of profits because of his inability to raise peanuts and to expand the poultry production, the trial court in this case did not err in holding that such damages were too speculative, conjectural, and remote because Wooten had no established past experience in raising poultry.
The Andersons finally contend that the trial court erred in refusing their demand for a jury trial on the issue of damages. In exercising its equitable powers, the trial court awards such incidental damages in an attempt to balance the equities in order to protect the rights of all the parties, and to do complete justice between them. See, Wray v. Harris, supra.
A balancing of the equities, by awarding incidental damages to do complete justice between the parties, falls within the equity jurisdiction of the trial court. A jury trial is inappropriate in an equitable action. See, Pugh v. Calloway,295 Ala. 139, 325 So.2d 135 (1976).
The judgment of the trial court is affirmed.
AFFIRMED.
HORNSBY, C.J., and JONES, HOUSTON and KENNEDY, JJ., concur.