The sole issue presented in this appeal is whether the trial judge, who had granted Randall Aldridge and the other plaintiffs specific performance of a real-estate contract, erred in failing to award incidental damages allegedly suffered as a proximate result of the defendant's failure to perform.
We believe that a trial court, so long as it does not exceed its discretion, has the power to determine whether to award incidental damages when it orders specific performance of a real-estate sales contract; consequently, based on the particular facts set forth in the record before us, we refuse to disturb the holding of the trial court that the plaintiffs were not entitled to incidental damages.
 Facts
Sometime in December 1999, Randall E. Aldridge entered into an oral agreement with Richard E. Olive; pursuant to that agreement Olive was to sell Aldridge a mobile home and 4.86 acres of real property on which the mobile home was located. The purchase price of the mobile home and the real property was $110,000. Under the terms of the oral agreement, Olive was to receive $18,762.13 as a down payment, and Aldridge was to assume a promissory note Olive had executed to First Southern Bank, which was secured by a mortgage on the 4.86 acres, and, in addition, to assume a second promissory note Olive had executed to AmSouth Bank, secured by a security interest in the mobile home.
Aldridge claimed that he was purchasing the 4.86 acres to establish a retail sales lot in a joint venture with SouthTrust Bank in *Page 1131 
order to sell mobile homes that SouthTrust Bank had repossessed.
One of Aldridge's main arguments in the trial court and on appeal is that he is entitled to recover incidental damages for the harm he allegedly suffered because Olive refused to timely schedule a closing date.[1] Olive disputes this claim and argues in his brief that "[b]oth parties contend that the other party refused to close as required under the [oral] agreement" but that any failure to close the transaction was caused by other factors and was not Olive's fault.
In any event, Aldridge sued Olive on February 14, 2001, seeking specific performance of the oral agreement, and in his complaint he sought incidental damages, including lost profits, he claimed he suffered as a direct result of Olive's failure to perform. In his complaint, he also included counts alleging breach of contract and fraud, and he subsequently amended his complaint to add as plaintiffs Rose Aluminum Products, a corporation; Blackburn Park, LLC; and Southern Housing Services, LLC, which he averred were "wholly owned and/or controlled by the plaintiff, Aldridge." He claimed that he caused these entities to make the payments to First Southern Bank and AmSouth, respectively, on the promissory notes secured by the land and the mobile home located on the land.
The case was tried on January 15, 2002, without a jury. The court heard oral testimony and also considered deposition testimony of Michael Carrigg, a vice president of SouthTrust Bank. The trial court subsequently rendered a judgment in favor of Aldridge and the other plaintiffs on March 21, 2002, in which it granted specific performance of the oral agreement and also at that time awarded incidental damages of $80,000. But on April 29, 2002, Olive filed a motion for relief from judgment and asked the trial court for additional time to submit additional argument, which the trial court granted.
Pursuant to the trial court's direction, Olive subsequently filed a brief entitled "Defendant's Argument," in which Olive argued, in part, as follows:
 "The undisputed testimony offered at trial establishes that the sales price for the Real Property was $110,000.00. Aldridge was to assume debts to AmSouth Bank and First Southern Bank (in the aggregate of $92,000.00) that were secured by a mortgage on the Real Property, while approximately $18,000.00 was to be paid to Olive in cash. Pending assumption of the AmSouth and First Southern debts and a closing of the transaction, Aldridge was to pay those debts. The undisputed trial testimony further establishes that the transaction was to be closed within approximately 30 days and that an attorney selected by Aldridge would close the transaction. The testimony at trial establishes that Aldridge was unable to assume the AmSouth and First Southern debts. The parties both testified that, when assumption of the outstanding obligations became impossible, Aldridge agreed to continue the purchase transaction, and stated that he would pay the outstanding obligations in cash at closing." *Page 1132 
In his brief to the trial court, Olive also argued that Aldridge had been convicted of a felony and that the trial court should view his testimony regarding many of the facts with that conviction in mind. He also argued that Aldridge was an experienced real-estate developer and that Aldridge did not present "any evidence to refute Olive's documented contention that Aldridge, through his counsel, had failed to close the deal and had made counter-offers at lower prices." Olive closed his argument by stating, "Consequently, Aldridge is not entitled to the relief sought in the complaint."
On July 29, 2002, after Olive had submitted his additional argument, the trial court entered an amended judgment, again granting specific performance; in this order, however, it denied the plaintiffs any incidental damages. After Aldridge and the other plaintiffs filed a motion to alter or amend the July 29, 2002, judgment, the trial court, on November 13, 2002, reaffirmed the July 29, 2002, judgment and the court ordered Aldridge to pay Olive $18,762.13 as a down payment. Aldridge and the other plaintiffs appealed, and the main issue presented is whether the trial court erred in failing to award incidental damages. We do not believe the trial court erred, and we affirm.
 Discussion
Under the applicable scope of review, we must determine whether the trial judge exceeded his discretion in refusing to award any incidental damages when he ordered specific performance of the contract.
This Court, on more than one occasion, has addressed the question whether a party can have "a decree for specific performance and damages for breach of the same contract." Grayson v. Boyette, 451 So.2d 798, 800
(Ala. 1984). In Grayson this Court stated:
 "The sole issue remaining, then, is whether, under the instant facts, both an award of damages and a decree of specific performance will lie for the breach of the same contract. Ordinarily, one cannot have a decree for specific performance and damages for breach of the same contract. Gulf Oil Corporation v. Spriggs Enterprises, Inc., 388 So.2d 518 (Ala. 1980). This Court has, however, on occasion, allowed both the recovery of damages and ordered specific performance of the same contract. Suter v. Arrowhead Investment Co., Ltd., 387 So.2d 815 (Ala. 1980)."
In Gulf Oil Corp. v. Spriggs Enterprises, Inc., 388 So.2d 518 (Ala. 1980), which was cited in Grayson, this Court said:
 "[O]ne cannot have a decree for specific performance and damages for breach of the same contract. Nor may the court award damages for the tort of fraud and misrepresentation and, at the same time, grant specific performance of the agreement. The theories of recovery are inconsistent, both legally and factually, and, therefore, the court's decree and the jury's verdict cannot coexist. U.S. Fidelity Guaranty Co. v. McKinnon, 356 So.2d 600 (Ala. 1978)."
388 So.2d at 520. But, see, Anderson v. Wooten, 549 So.2d 40 (Ala. 1989), where the trial court granted specific performance and also ordered the payment of incidental damages. On appeal, the Andersons contended that the trial court had erred in awarding incidental damages to Wooten in an equity action where it had ordered specific performance. This Court disagreed. We said, in part:
 "The trial court, applying equitable principles, was authorized to make those findings. Suter v. Arrowhead Investment Co., 387 So.2d 815 (Ala. 1980); Grayson v. Boyette, 451 So.2d 798 (Ala. 1984). *Page 1133 
 "The trial court granted Wooten, as incidental damages, one half of the profits from the poultry operation, amounting to $8,412.40, as specified in the sales contract; rent for the dwelling on the farm, amounting to $1,984; rent from the peanut allotment, amounting to $992.82; and rent for the hay pasture, amounting to $433.81; totaling $11,823.03. The trial court found, however, that the Andersons were entitled to a set-off for accrued interest on the down payment, which totalled $9,452.02. The trial court then entered a judgment in favor of Wooten for incidental damages in the amount of $2,371.01. We find no error in this aspect of the trial court's judgment.
 "In his cross-appeal, Wooten contends that he is additionally entitled to out-of-pocket expenses, attorney fees for the period between July 24, 1987, and September 21, 1987, and accountant fees. We disagree, and we affirm the trial court's judgment on the cross-appeal.
 "It is within the sound judicial discretion of the trial judge to make findings regarding incidental damages when balancing the equities between the parties in specific performance cases. See, Wray v. Harris, 350 So.2d 409 (Ala. 1977). Absent a clear abuse of that discretion, or palpable error, such findings will not be disturbed on appeal."
549 So.2d at 43-44. In Anderson v. Wooten, the plaintiff made a claim for lost profits, as was made in this case. On that issue this Court said:
 "In regard to Wooten's claims for loss of profits because of his inability to raise peanuts and to expand the poultry production, the trial court in this case did not err in holding that such damages were too speculative, conjectural, and remote because Wooten had no established past experience in raising poultry.
 "The Andersons finally contend that the trial court erred in refusing their demand for a jury trial on the issue of damages. In exercising its equitable powers, the trial court awards such incidental damages in an attempt to balance the equities in order to protect the rights of all the parties, and to do complete justice between them. See, Wray v. Harris, [350 So.2d 409
(Ala. 1977)].
 "A balancing of the equities, by awarding incidental damages to do complete justice between the parties, falls within the equity jurisdiction of the trial court. A jury trial is inappropriate in an equitable action. See, Pugh v. Calloway, 295 Ala. 139, 325 So.2d 135
(1976)."
549 So.2d at 44.
Aldridge's basic argument in support of his claim that he is entitled to incidental damages is that "[t]he evidence was . . . undisputed that [he] and the other plaintiffs had sustained damages and the amount of said damages as a result of Olive's breach of his [oral] agreement," and that the trial court should have awarded him damages in the amount he proved. In his brief to this Court, he states:
 "On the issue of Aldridge's damages, the substance of the plaintiff's testimony is as follows:
 "(1) that Aldridge's damages range between $118,800 and $152,880;
 "(2) that said damages were based upon loss of rent and loss of sales commission arising from the loss of a lease and sales agreement the plaintiffs had with SouthTrust Bank;
 "(3) that the amount of damages for loss of commission was based on prior sales history of the plaintiff and SouthTrust Bank relative to the sale of mobile homes from the lot and commissions paid thereon; *Page 1134 
 "(4) SouthTrust Bank terminated its agreement with Aldridge and thereby caused the above-described financial loss to Aldridge due to Olive's refusal to convey the real property and mobile home;
 "(5) that Aldridge told Olive that SouthTrust Bank was terminating its agreement with him because Aldridge could not obtain control of the property;
 "(6) that Aldridge had committed $800,000 to the project planned for the property and needed the 4.86 acres for ingress and egress."
(Aldridge's brief, pp. 15-16; citations to record omitted.) Aldridge also contends that the record shows, without dispute, that he suffered a loss of rental income and the loss of commissions on sales of the mobile homes that had been repossessed by SouthTrust Bank and that he intended to sell on the property. He says that the trial judge clearly exceeded his discretion by "not awarding the plaintiffs monetary damages" to "place the plaintiffs back in the same position they would have been had Olive closed the transaction within thirty (30) days of the date of the agreement as Olive admitted in his trial testimony he was supposed to do."
On the other hand, Olive argues that the amount of incidental damages Aldridge and the other plaintiffs allegedly suffered was not undisputed, as they claim. He says that on cross-examination "Aldridge admitted that his damage[s] calculations were based on conjecture and not supported by any evidence."
We have examined the record and the briefs of the parties, and we are of the opinion that the trial judge did not clearly exceed his discretion in refusing to award Aldridge and the other plaintiffs incidental damages.[2] Furthermore, this Court has said that "[i]n exercising its equitable powers, the trial court awards such incidental damages in an attempt to balance the equities in order to protect the rights of all the parties, and to do complete justice between them," and further that "[a] balancing of the equities, by awarding incidental damages to do complete justice between the parties, falls within the equity jurisdiction of the trial court." Anderson v. Wooten, 549 So.2d at 44.
Although Aldridge recognizes the general rule that a party cannot have specific performance of a contract and also damages for breach of the same contract, he argues that "in order to do complete equity and where the damages are incidental to the breach of [the] contract, there are numerous cases where specific performance and the recovery of damages have been allowed." (Aldridge's brief, p. 18.) He cites Grayson v.Boyette, supra; Suter v. Arrowhead Inv. Co., 387 So.2d 815 (Ala. 1980); and Wray v. Harris, 350 So.2d 409 (Ala. 1977), in support of his argument. We agree that this Court, in an appropriate case, has permitted the recovery of incidental damages when specific performance has been ordered, but we must point out that in Wray v. Harris, which Aldridge cites, this Court determined that the plaintiff had not presented any prior records *Page 1135 
from which to determine the profits of the business; therefore, this Court questioned whether any incidental damages should have been allowed.[3] In Wray v. Harris, this Court stated that the plaintiffs Wray and Hatmaker were starting a new business, and "they had no prior records on which profits could reasonably be based." 350 So.2d at 414. We believe that the facts of this case are similar to those in Wray v.Harris; therefore, the judgment of the trial court is due to be affirmed.
This opinion was prepared by Retired Justice Hugh Maddox, sitting as a Justice of this Court pursuant to § 12-18-10(e), Ala. Code 1975.
AFFIRMED.
SEE, BROWN, JOHNSTONE, HARWOOD, and STUART, JJ., concur.
[1] Under the terms of the oral agreement, the closing was to occur within 30 days of the date of the oral agreement, but Aldridge was to be put in immediate possession of the land and mobile home. Aldridge took possession immediately and remained in continuous possession until this action was filed. Olive claims that the delay in closing was not his fault, and that Aldridge had failed to close the deal and had continued to make counteroffers at lower prices than the $110,000 purchase price.
[2] For example, on cross-examination, Aldridge stated, in part, the following, relating to his claim for damages:
 "Q. Would it be fair to say that the mobile home business over the last few years has gone south, I mean that sales have been bad?
"A. Absolutely.
". . . .
 "Q. So you basically sat down and guesstimated some numbers here for average monthly sales that you might have done, and what your expenses might have been.
 "But, any number of a million things could have affected that, couldn't it?
"A. Always."
[3] In that case, this Court stated:
 "Since we hold that specific performance should be granted, this court must address the issue of damages. The jury in this case awarded the appellants $40,000 in damages, which the trial judge remitted to $25,000. For the reasons given below, we question the necessity of allowing any of these damages on remand."
350 So.2d at 413-14.