257 So.2d 320

**G. F. GOODWYN, Jr.**

**v.**

**R. B. JONES et al.**

**6 Div. 745.**

Supreme Court of Alabama.

Dec. 16, 1971.

Rehearing Denied Feb. 10, 1972.

Norman K. Brown, Bessemer, for appellant.

George Beck, Jr., St. John & St. John, Cullman, for appellees.

PER CURIAM.

Respondent Goodwyn appeals from a final decree in equity that decides the declaratory issues in favor of appellees; and also awards specific performance of four contracts between the respondent and complainants, whereby said respondent agreed in writing to convey specified real estate on payment of an agreed purchase price. Each contract is dated October 10, 1966.

The bill of complaint avers and the proof shows that, during part of the year 1966 and a period of time prior to 1966, the Louisville and Nashville Railroad Company (hereinafter called L & N) was the owner and in possession of a tract of land (approximately 34 acres) in NW ¼ of the SE ¼, Section 29, Township 12 South, Range 5 West, adjacent to and bordering on Smith Lake Reservoir in Cullman County, Alabama.

It was further alleged and proven that complainants, R. B. Jones, V. L. McCollum, Homer A. Gibbs, and F. G. Hughes—each over the age of 21 years, had for many years been employed by L & N which, motivated by said relationship, entered into a contractual arrangement whereby said L & N leased to each complainant, and others, a campsite on said 34-acre tract.

Each complainant went into possession of his leased area and continued in such possession without interruption, except complainant R. B. Jones reduced his leased area from approximately two acres to approximately one acre. Each complainant (lessee) during his possession prior to October 10, 1966, wrought a change in his leased area from a wilderness to habitable comfort. Each personally felled trees, cleared undergrowth, and moved rocks and boulders. They erected or caused to be erected comfortable buildings for their own occupancy; erected tool houses, storage sheds, installed septic tanks and field lines for sewage disposal; also, they erected piers and docks. These improvements provided comfortable and pleasurable campsites on said leased areas. This possession and occupancy of the leased areas by appellees continued without interruption until and after suit was filed and the case heard.

Prior to October 10, 1966, respondent (appellant) purchased an area of land from L & N that adjoined the 34-acre tract, supra. L & N refused at the time to sell this 34-acre tract to appellant for reasons not shown by the evidence to have been communicated to appellant. It appears though that the sale was not then made to respondent because L & N wanted to protect the campsites of complainants and other employees from encroachment or dissipation.

Finally, in response to further overtures of respondent to purchase the 34 acres, L & N decided to sell to him, but not without an effort to insure that each complainant (and probably other employees with campsites) was given an opportunity to purchase his campsite. It is to be noted that three of the complainants signed a renewal lease with L & N that reduced the leased area from approximately one acre to approximately one-half acre. The fourth complainant, R. B. Jones, did not sign a renewal lease, but continued in possession of the original area. Likewise, it appears from the evidence that the other three complainants, after renewal leases were executed, also continued in possession of the original areas. It appears that the renewal leases were prepared by officers or agents of L & N in its office at Louisville, Kentucky, without a survey of the leased area and minus any definite ascertainment that the one-half acre encompassed the improvements and the cleared area then and theretofore in possession of complainants.

Officers or employees of L & N land department prepared (probably without legal advice) an agreement which an agent of L & N submitted to respondent for his approval and signature. There were four such agreements, all of which were identical in verbiage and contractual effect.

The agent who submitted the instruments to respondent informed him that L & N would not execute and deliver him a deed to the 34-acre tract without his approval of and signature to the instruments and an acceptance by each complainant of the offer embraced in the said instruments. The offer or contract reads as follows (omitting salutations):

"Upon receipt and acceptance of a warranty deed from the Louisville and Nashville Railroad Company conveying to me the property in Section 29, Township 12 South, Range 5 West, which was excepted in deed to me from the L & N Railroad Company dated Aug. 20, 1965, I shall make you the following offer:

"I shall sell to you by a warranty deed, that area you are now occupying for a campsite (leased from the L & N R.R. Co.) at the rate of $500.00 for one-half acre.

"The area conveyed is to be determined by a survey at my expense and the sale price will be proportionate to the above mentioned rate.

"Yours truly,

"/s/ OK GFG Jr.
"Gardner F. Goodwyn, Jr.

"I hereby accept the above offer."

We here note that each complainant signed the acceptance, supra, and returned it to L & N, which subsequently conveyed the 34 acres to respondent Goodwyn, who declined to convey the occupied area to complainants.

Respondent, prior to answer, filed a demurrer to the amended bill of complaint. The demurrer was overruled. This ruling is assigned as error.

Thereafter, respondent filed an answer to the bill as amended. Issues were joined on the amended complaint and the answer thereto. The trial court heard the evidence ore tenus and also made a personal inspection of the occupied areas which were leased to complainants. Evidence was adduced to identify the occupied areas. The transcript covers 192 pages of testimony, with numerous exhibits copied into the record, together with several detached maps or plats.

Appellant's assignment of error numbered 7 asserts that the trial court erred in overruling his demurrer to the amended complaint. One argued ground of the demurrer asserts that the amended complaint is multifarious. Appellant contends that the several complainants have joined in a bill against him on separate contracts, for separate parcels of land, there being no community of interest among them. As we have observed, it is always difficult to determine just when multifariousness has infected a bill of complaint. Freeman v. Delorme, 254 Ala. 445, 48 So.2d 543. We said in Allgood v. Bains, 247 Ala. 669, 675, 26 So.2d 98:

"The courts have found it difficult to give any distinct definition of multifariousness, and the cases so nearly approach each other that it is difficult to distinguish them. No universal rule in regard to multifariousness can be laid down to cover all possible cases. It is largely a matter of discretion, and every case must, in a measure, be controlled by what is convenient and equitable under its own particular facts, subject to the recognized principles of equity jurisprudence. (Citations Omitted) As was stated in Adams v. Jones, 68 Ala. 117, 119, 'And it is always proper to exercise this discretion in such manner as to discourage future litigation about the same subject-matter, and prevent a multiplicity of suits, and never so as to do plain violence to the maxim that courts of equity "delight to do justice, and not by halves." ' "

■ Here, we find that the original of complainants' rights asserted in their complaint may be traced to a transaction by appellant with L & N, whereby the latter company agreed to deed respondent (appel-

lant) an area of land embracing approximately 34 acres if he would protect complainants in their occupancy of leased premises forming a part of said 34 acres and deed each of them his occupied premises for a specified consideration. All of complainants belong to a given class—lessees occupying leased lots on the land which L & N deeded respondent. The rights of each complainant depend on a contract that is identical to the other three. Even a major portion of the evidence adduced was applicable to all the contracts, especially with reference to the transactions leading up to respondent's written offer, supra, to each complainant and his acceptance. The validity of each contract and the complainant's right to specific performance is dependent on the same legal construction. A single suit at the instance of all four complainants joined together here disposes of four suits had each been filed separately. We fail to see where respondent is prejudiced by such joinder or is a victim of confusion. Extended litigation and unnecessary expense and time consumed by the trial court would have resulted from separate suits. The one suit has accomplished a result the same as four different suits and without prejudice to respondent as we see the record.

We conclude that the ground of the demurrer charging multifariousness in the complaint is without merit. The trial court in its ruling on the demurrer with respect to the ground charging the complaint with being multifarious was free of error. We will not consider any ground not here argued.

The other questions raised in this appeal are: Whether the offer of October 10, 1966, from respondent to complainants and their acceptance is valid under the Statute of Frauds (Title 20, § 3, Code 1940); and, which could be specifically enforced in a bill as here for declaratory judgment.

 We do not think there is a serious doubt that a justiciable controversy exists, arising out of an interpretation of the four contracts, and that a declaratory judgment is an appropriate means to resolve it. Code 1940, Title 7, § 156, et seq.; Alabama State Milk Control Board v. Graham, 250 Ala. 49, 33 So.2d 11; Dozier v. Troy Drive In Theatres, Inc., 258 Ala. 417, 63 So.2d 368. We also think that in a bill as here for declaratory relief, supplemental relief in the form of specific performance is available to complainants. Dozier v. Troy Drive In Theatres, Inc., supra.

 Of more difficulty is the question whether parol evidence can here be resorted to in aid of the description given in the contract. Assignments of Error 1 through 6 are addressed to this issue. The main thrust of appellant's argument is that the alleged contracts are void due to insufficient description of the subject matter, and therefore cannot be enforced. Appellant advances the general rule, as enunciated in Shannon v. Wisdom, 171 Ala. 409, 55 So. 102, and other authorities, that a contract for sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it can be identified without resort to oral evidence.

But even so, a general description may be made specific and certain by parol evidence and concurrent facts and circumstances sufficient to that end. We observed in Dobson v. Deason, 248 Ala. 496, 498, 28 So.2d 418:

"The cases cited by appellees to the effect that the writing must contain facts sufficient to identify the land, and oral evidence of the intention of the parties is not admissible (Citations Omitted) do not in any respect militate against the rule that a general uncertain description can be made specific and certain by. parol evidence of concurrent facts and circumstances sufficient to that end. (Citations Omitted)

"That is the nature of the description in the instant case, and it is not void for uncertainty, but may be aided by evidence of facts and circumstances making it clear and certain."

While the case of Shannon v. Wisdom, supra, and other cases lay down the general rule prohibiting parol evidence from supplying a description, it is not unqualified and inflexible. See Ellis v. Burden, 1 Ala. 458; Meyer Bros. v. Mitchell, 75 Ala. 475; Howison v. Bartlett, 141 Ala. 593, 37 So. 590; Alabama Central R. Co. v. Long, 158 Ala. 301, 48 So. 363; Doe ex dem. Slaughter v. Roe, 221 Ala. 121, 127 So. 671; Dobson v. Deason, supra; Dozier v. Troy Drive-In-Theatres, 265 Ala. 93, 89 So.2d 537. The principle is discussed in 23 A.L.R.2d, Statute of Frauds, § 2, where the test for sufficiency is said to be:

". . . . does the writing furnish the means of identification, or, as some cases have it, does it provide the 'key' to the identification, the applicable principle being that that is certain which can be made certain. . . . .

". . . . . . .

". . . . The initial question, it seems, is not whether the words are clearly and indisputably sufficient, but rather whether they are such as will entitle the claimant to go forward with his proofs and show if he can that in the light of proper evidence the subject of sale is sufficiently designated."

Justice Somerville, in Minge v. Green, 176 Ala. 343, 350, 58 So. 381, expressed the principle in these words:

"Courts are loath to strike down (a) deliberate contract because of supposed uncertainty in any of its terms; and, if any of these terms are ambiguous and prima facie capable of more than one meaning, the court will look to the situation of the parties and the objects they had in view to determine their true meaning. Especially will the court in such cases construe doubtful terms against the party who framed them, and who is offering or undertaking to do the things in question. These are elementary principles . . . ."

Appellant contends that the foregoing principles cannot be applied where the property to be conveyed is a parcel within a larger tract, citing no authority within this jurisdiction. We disagree. In Meyer Bros. v. Mitchell, supra, the complainant transferred to another his interest in a land auction bid in consideration of transferee's written agreement to convey to him a portion of the auctioned property, described only as ". . . . '. . . . sixty acres of land, viz., fifty acres Comida and Cone bottom, also ten acres hillside woodland, joining the Mitchell tract; also one double house. . . .' . . . ." The complainant was put in possession, but no deed had been delivered to him when the entire tract was conveyed to the respondents who repudiated the complainant's contract. In a suit for specific performance of the contract, the court allowed parol evidence to clarify the ambiguity in the description.

Alabama Central R. Co. v. Long, supra, offers strong authority for the proposition under discussion. There the railroad secured from a landowner a contract for the conveyance of "'. . . . such lands as may be in actual use or occupancy by it on the completion of its roadbed . . . .'" Subsequent to the landowner's death, and after completion of the roadbed and the refusal of the administratrix to perform the contract, the railroad sought specific performance in a court of equity. Although the contract had been conditioned on a future event, the completion of the roadbed, the court looked to the extrinsic facts relative to the said completion, and to the railroad's actual occupancy thereof, and held that the description was thereby made certain.

In Dozier v. Troy Drive-In-Theatres, 265 Ala. 93, 89 So.2d 537, the respondent leased "'Nine acres of land located on the Troy-Brundidge Highway in front of the premises occupied by J. D. Grimes Cafe, said nine acres of land to be selected by the said M. H. Carter . . . .,'" lessee, who was to procure a survey and attach it to the agreement. The lease agreement also contained an option to purchase.

The complainant, the assignee of the agreement, chose to exercise the option but the respondent refused to sell, contending that the description of the land in the agreement was insufficient under the statute of frauds. The complainant thereupon filed a bill for declaratory judgment and specific performance. The court allowed the evidence of the survey and consequent location of the lands selected. In arriving at its decision, the court recited with approval a portion of 37 C.J.S. Frauds, Statute of § 190, as follows:

" . . . . 'Where the purchaser or lessee is put into possession, or takes possession with the acquiescence of the vendor or lessor, of a definite tract of land, the identity of the subject matter is established and any uncertainty or indefiniteness in the description thereof is removed.' . . . ." (265 Ala. at 100, 89 So.2d at 543.)

 In the instant case, each complainant was occupying a certain area of land within the 34 acres. The lines of the occupancy were impressed by cleared land and improvements. Respondent elected by adoption of an instrument prepared by L & N to offer each complainant the opportunity to purchase this occupied area upon payment of a sum set forth in the offer. Each complainant was in possession of only one occupied area within the 34 acres. Respondent designated the area to be purchased, namely the occupied area. We think it was permissible to identify the occupied area by competent evidence, and that the respondent, having elected to designate the area by a general term, cannot now complain against evidence to establish by metes and bounds, or other description, the occupied area.

Looking at the situation of the parties and the objects they had in view, the court below properly concluded that the description in the contract, namely, "that area you are now occupying for a campsite (leased from the L & N R. R. Co.)" was subject to certain description. Parol evidence was admissible to remove the ambiguity and uncertainty in the description. Under the authorities cited and discussion hereinabove, we find no error in the chancellor's findings and decree.

The decree is due to be affirmed and it is so ordered.

The foregoing opinion was prepared by Bowen W. Simmons, Supernumerary Circuit Judge, and was adopted by the court as its opinion.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH, MADDOX and Mc-CALL, JJ., concur.