COOK, Justice.
Henry and Lona Mullinax appeal from a summary judgment entered in favor of Galen-Marshall, Inc., and Louellen Jeong in the Mullinaxes’ action seeking specific performance of a contract to sell real estate. We affirm.
The evidence suggests that in April 1992, Louellen Jeong, president of Galen-Marshall, visited Henry Mullinax, the owner and operator of “Mullinax Auto Sales,” with the intention of borrowing money. She offered to use a parcel of real estate owned by Galen-Marshall as collateral for the loan. In connection with this proposal, she gave Mullinax a copy of Galen-Marshall’s deed, which described in metes and bounds three parcels of real estate. Also, she presented Mullinax a survey map on which she outlined the dimensions of the property she was offering as collateral. The outlined parcel corresponded *432 approximately, but with significant differences, to property designated as “parcel two” in the Galen-Marshall deed.
During subsequent discussions, Mullinax offered to purchase from Jeong a parcel of real estate. On April 16, 1992, the parties executed a document by which Henry and Lona Mullinax agreed to purchase real estate from Jeong and Galen-Marshall. The document did not describe the real estate, stating only: “SEE LEGAL DESCRIPTION.” At that time, Henry Mullinax gave Jeong $1000 in earnest money.
Before the date set for the closing of the sale and delivery of the deed, the Mullinaxes’ attorney discovered that the metes-and-bounds description of the property in the Galen-Marshall deed did not correspond to the outline on the survey map. As a result of this discovery, the parties executed another document on April 21, 1992, which, like the first instrument, provided for the sale of the property. Like the first instrument, the second one contained no description of the parcel, stating only: “SEE LEGAL DESCRIPTION.” However, the second instrument provided: “Closing will take place within 10 days after satisfaction of legal description.(Emphasis added.) The Mullinaxes contend that the provision contemplated that Jeong would procure a “corrected” description. The instrument also required the Mul-linaxes to pay Jeong $500 at the first of each month until closing.
Jeong did not attempt to resolve the discrepancies in the descriptions. Instead, she sought to refund the Mullinaxes’ earnest money and refused their tender of the monthly installments. On May 19, 1992, the Mullinaxes sued Jeong and Galen-Marshall, seeking a judgment requiring Jeong and Galen-Marshall to deliver a deed to property described precisely as parcel two was described in the Galen-Marshall deed. Each party moved for a summary judgment. The trial judge granted the defendants’ motion, stating:
“It is undisputed from the documents filed, and the testimony presented, that the alleged contract or contracts do not contain any legal description. The only reference in either written document is ‘see legal description.’ There is revealed in the depositions, the fact that the parties had not been able to settle on a legal description.
“The Statute of Frauds in Alabama has been repeatedly held to apply to situations such as that presented here. The requirement of writing as to the description of the lands is such that the contract ‘must describe the lands with such certainty that they can be identified without resorting to oral evidence. While the writing need not give a technical description of the lands contracted for, it must contain facts sufficient to identify them. If it is necessary to resort to oral evidence for the intention of the parties to the lands bargained for, the writing is not sufficient, and the Statute is not complied with.’
“A review of other applicable law in Alabama indicates that the contract sued upon is void or voidable for failure to meet the Statute of Frauds.”
The Mullinaxes appealed, raising, as the sole issue, whether the instruments describe the subject real estate with sufficient specificity to comply with the requirements of Ala.Code 1975, § 8 — 9—2(5), the Statute of Frauds.
Section 8-9-2(5) provides in relevant part:
“In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith ...:
[[Image here]]
“(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller....”
The trial judge correctly observed that the Statute of Frauds does not invalidate a contract merely because it contains “‘a general uncertain description[, where that description] can be made specific and certain by parol evidence of concurrent facts and circumstances sufficient to that end.’ ” Goodwyn v. Jones, 288 Ala. 71, 75, 257 So.2d *433 320, 324 (1971) (emphasis added) (quoting Dobson v. Deason, 248 Ala. 496, 498, 28 So.2d 418, 419 (1946)). However, the instrument must at least “ ‘furnish the means of identification, or, as some cases have it, ... provide the “key” to the identification, the applicable principle being that that is certain which can be made certain.’ ” Goodwyn, 288 Ala. at 76, 257 So.2d at 324 (emphasis added) (quoting Annotation, Statute of Frauds — Description of Land, 23 A.L.R.2d 6, 12-13 (1952)).
Thus, in Goodwyn the property forming the basis of the dispute involved four separate “campsites” located within a 34-acre tract. Each campsite had been separately leased to and occupied by one of four individuals for a considerable time before the dispute arose. Each individual had, on his campsite, “personally felled trees, cleared undergrowth, and moved rocks and boulders.” 288 Ala. at 73, 257 So.2d at 321. Each had “erected or caused to be erected comfortable buildings for [his] own occupancy; erected tool houses, storage sheds, installed septic tanks and field lines for sewage disposal; also, they [had] erected piers and docks.” Id. Each lessee eventually sought to purchase his campsite; the four lessees entered separate purchase contracts in which the offered property was described as “that area you are now occupying for a campsite (leased from the L & N R.R. Co.) at the rate of $500.00 for one-half acre.” 288 Ala. at 74, 257 So.2d at 322. The prospective purchasers sued for specific performance of the contract after the owner refused to convey the property.
This Court rejected the owner’s argument that the language did not describe the property sufficiently to satisfy the Statute of Frauds. It concluded that the description, although stated in general terms, was sufficient, where each purchaser was offered the area on which he resided — an area that was well demarcated and recognized. Under those circumstances, it explained, the owner could not “complain against evidence to establish by metes and bounds, or other description, the occupied area.” 288 Ala. at 77, 257 So.2d at 325.
The instruments involved in this case, however, are not so directly linked to clearly established facts and circumstances that the description of the property can be “made certain.” The extent to which parol evidence would be necessary in order to fix the location and dimensions of the subject property is amply illustrated by the following deposition testimony of Henry Mullinax:
“Q. [By counsel for Jeong] Is that the document that you’re suing on?
“A. Sir, this is a second contract. The first contract, when the monies were disbursed, was on the 16th day of April. This was a contract because there was some discrepancy in the description of the property, and the amount of acreage of the property, and it was in this situation until it was corrected.
[[Image here]]
“A. The next time I saw her was probably the 21st when we closed the second contract.... But anyway, the description of the property was messed up. The beginning point was 300 feet, you know, too far east or west, or whatever. The beginning point was wrong. So, we couldn’t ... close. We had set a closing for the 19th, I believe, and we couldn’t close until we got the description corrected.
[[Image here]]
“Q. I notice there’s no description attached to the contract.... Was the description ever resolved between you and Ms. Jeong?
“A. The description was provided to me separately by her along with a map the day that we first talked, and she pointed out the piece of property that she had ... by circle, and I have a map at the office. She had circled the piece of property that she was wanting to borrow the money on, and she provided a legal description through a deed that she had from her sister, and circled the legal description on the deed.
“Q. Then you found out through your attorney that that legal description *434 was insufficient or wouldn’t work. Is that what happened?
“A. It would not meet the dimensions of the map and it was short of the acreage that was called for. When I approached Ms. Jeong about it, she said there would be no problem getting a corrected description.
“Q. But you all never agreed on a corrected description?
“A. She never obtained a corrected description. This came up first.
[[Image here]]
“Q. And you and Ms. Jeong had not agreed on a legal description [as] of this date. Is that right?
“A. We had agreed on a legal description in a map of the area, and she showed me a map that contained the property that she was to sell with dimensions on the map, but the dimensions in the legal description were called for [in the instruments?] and it would have been approximately the right acreage on the legal description, but the beginning point was wrong.
“Q. So, it was actually property that she didn’t own at all, that was described in the legal description?
“A. The property described was part of what she owned and part of what was realtor owned, the adjoining properties.
“Q. So when you did the new contract, that was done in recognition of the fact that you all did not have an agreed-on legal description. Is that right?
“A. That is correct.
[[Image here]]
“Q. Do you know if the legal description that is in the complaint is the legal description that you want, or is that what you are telling us is an erroneous legal description?
“A. This is the legal description of which we had an original contract. This legal description is the beginning point of ‘north of Airport Road right-of-way, 1270 feet east of the southwest corner.’ ... The property adjoining her on the other side belongs to her sister, and her sister deeded this property to her, and the attorney who prepared the document apparently had started a point of beginning 300 feet too far east. It should have read ‘970 feet at a point of beginning.’
“Q. So, if somebody actually mapped that description out, would it be a piece of property that is sort of jogged off to the east of what you are trying to—
“A. It would be a piece of property to the exact dimensions of the map that she drew, I mean that she showed me, survey map, that would lie 300 feet to the east of where the actual property should lay.
“Q. How wide is the piece of property?
“A. It is supposed to be 350 feet wide— frontage.
“Q. So, does this description actually land mostly on the [adjoining] property?
“A. It moves 300 feet to the east.
“Q. So, there is about 50 feet of—
“A. Fifty feet of right-of-way.
“Q. —that you wanted to get, that you actually got in this description.
“A. By this description, yes, sir.”
Mullinax Deposition, at 15-33 (emphasis added).
It is undisputed that the instruments involved in this case do not describe the property to which they refer. More significantly, the “legal description” referenced in the instruments could refer to either of two parcels of significantly different dimensions. One parcel, as indicated in the Mullinax deposition, is defined by the metes and bounds set forth in the Galen-Marshall deed. The other parcel is defined by the outline drawn on the survey map by Jeong. The discrepancy is thus substantive and not a mere “scrivener’s error,” as the Mullinaxes contend in their brief. Brief of Appellants, at 2.
The extent of confusion generated by the absence of a written property description is amplified by the fact that the complaint in which the Mullinaxes seek specific performance describes the parcel that is designated *435 in the Galen-Marshall deed as “parcel two.” The Mullinaxes clearly rejected that parcel; hence the execution of the April 21, 1992, instrument, which called for another description. Moreover, as indicated in the Mullinax deposition, the Mullinaxes do not now want such a parcel. The instruments, themselves, do not “provide the key” to identification of the subject property. Goodwyn, 288 Ala. at 76, 257 So.2d at 324. Therefore, the judgment of the trial court is affirmed on the authority of Ala.Code 1975, § 8-9-2(5), the Statute of Frauds.
AFFIRMED.
HORNSBY, C.J., and ALMON, HOUSTON and KENNEDY, JJ., concur.