66 So.3d 209 (2010)
Martha A. NIX and Charles E. Upham
v.
Skip WICK, Christie Wick, and James Robert Oldfield.
1090687.
Supreme Court of Alabama.
December 30, 2010.
*210 Stephen P. Brown, Birmingham, for appellants.
Michael B. Odom and Michael B. Beers, Jr., of Haskell Slaughter Young & Rediker, LLC, Birmingham, for appellees.
LYONS, Justice.
Martha A. Nix and Charles E. Upham appeal from a summary judgment entered by the Jefferson Circuit Court against them and in favor of Skip Wick, Christie Wick, and James Robert Oldfield. We affirm.

Factual Background and Procedural History
Skip Wick and his wife Christie Wick ("the Wicks") owned a house with approximately 4 ½ acres of land at 296 West Shugart Ridge in Gardendale. Christie Wick, jointly with her brother, James Robert Oldfield, owned several acres of land adjacent to and surrounding the Wicks' property. On April 2, 2008, the Wicks signed an agreement to sell their house and 4 ½ acres ("the April 2 contract") to Charles Upham and Martha Nix, a married couple ("the Uphams"). On the same day, the Wicks and the Uphams signed an addendum ("the addendum") to the April 2 contract. The addendum stated:
"... This agreement is for the additional at least 5 acres at a price of ... $32,500 per acre.
"This is an option for the [Uphams] to purchase this adjoining acreage. [The Wicks] to have property surveyed and do county zoning requirements in a timely manner (not to exceed three months) at [the Wicks'] expense. Survey to be approved and acceptable to [the Uphams]."
The Wicks and the Uphams closed on the April 2 contract on April 16, 2008, and the Wicks deeded their house and 4 ½ acres to the Uphams on that date.
*211 Subsequently, on April 22, 2008, the Wicks and the Uphams signed an agreement ("the April 22 contract") stating:
"The [Uphams] hereby agree to purchase and the [Wicks] hereby agree to sell the following described lot or other unimproved land and appurtenances thereto (`the Property') situated in the City of Gardendale, County of Jefferson, Alabama on the terms stated below: Address: adjacent to 296 West Shugart Ridge and legally described as Lot ___, Block ___ Survey ___ Map Book ___ Page ___
"1A. THE PURCHASE PRICE Shall be $32,500 per acre (at least 5 acres)....
"....
"This contract is per agreement written on Addendum sheet on 4/2/08."
(Emphasis added.) The April 22 contract stated that the addendum was attached to it; however, none of the copies of that contract in the record included the addendum.
Skip Wick testified that "prior to the [April 16, 2008,] closing, but after the [April 2] contract had been written," the Wicks and the Uphams met on the Wicks' property and discussed the Uphams' purchase of 5 adjacent acres. Wick testified that they "discussed that the potential property lines would run forty feet to the left of the mailbox [along a road] as you are facing the house, and then would run back to the right corner of the property." In her testimony, Martha Nix confirmed Skip Wick's description of the potential property lines. That description, however, was not included in either the addendum or the April 22 contract. The following exchange occurred at Martha Nix's deposition:
"Q. ... Tell me, looking at this April 22 contract, tell me how I can look at it and go out there and locate the five acres that's supposed to be the subject of this April 22 contract.
"A. There's no way you can.
"....
"Q. ... [Y]ou testified earlier that you can't look at the April 22, 2008, contract and determine where that five acres is; correct?
"A. Well, that's because there was no legal description to the five acres that we were told.
"Q. Okay.
"A. And there's no legal description without a survey.
"Q. Okay. But there's no dispute that there's not a legal description attached to that April 22, 2008, contract?
"A. That's right. Because there's no survey.
"Q. Right. And so there's no way that you can just look at that April 22 contract and determine where the five acres is; correct?
"A. Right.
"Q. But you had a verbal understanding of where you thought the five acres was supposed to be; correct?
"A. Well, we had an understanding of where we were told the five acres would be."
It is undisputed that Skip Wick did not own the five acres to the left of the mailbox that he had described to the Uphams (hereinafter "the left five acres"). He testified that he told the Uphams that "all that"presumably his description of the left five acres and the Uphams' purchase of those acres"was contingent on [Oldfield] as being the partial owner of the property." The Uphams deny that Wick told them that Oldfield was joint owner of the left five acres. At his deposition, Skip Wick testified that he could understand how his statements to the Uphams along *212 with his execution of the April 22 contract may have been misleading; however, he denied any intent to mislead the Uphams.
Ultimately, Oldfield refused to sell the left five acres, and the Wicks did not obtain a survey of them. The Wicks instead submitted to the Uphams a survey of other land adjacent to 296 West Shugart Ridge, which, they contend, satisfied the descriptions in the addendum and the April 22 contract. The Uphams rejected that land as noncompliant with their oral agreement with the Wicks. They also contend that they would not have purchased the Wicks' house and 4 ½ acres at 296 West Shugart Ridge if they had known that they could not also purchase the left five acres. Skip Wick conceded at his deposition that he knew that the Uphams purchased his house and land, in part, because of the availability of the left five acres.
On March 23, 2009, the Uphams sued the Wicks and Oldfield seeking specific performance of the addendum and the April 22 contract. Alternatively, the Uphams sought rescission of the April 2 contract. The Uphams also stated claims against the Wicks and Oldfield alleging breach of contract, fraudulent misrepresentation, suppression, and fraudulent inducement; against Oldfield alleging tortious interference with the April 22 contract; and against "any defendant" for negligence and wantonness.
The Wicks and Oldfield answered the complaint, raising as a defense § 8-9-2(5), Ala.Code 1975, the Statute of Frauds. The Wicks and Oldfield subsequently moved for a summary judgment as to all the Uphams' claims. They argued that the April 22 contract was void under the Statute of Frauds because it did not sufficiently describe the land to be purchased, that the Uphams' tort claims failed because they were based on the void April 22 contract, and, alternatively, that the Uphams' tort claims were not supported by sufficient evidence. The Uphams responded and, on January 11, 2010, the trial court entered an order stating:
"The April 22, 2008, contract is void under the Statute of Frauds because the real property which is the subject of said contract is insufficiently described. The [Uphams'] claims, being dependant upon the April 22, 2008, document, must fail. See, DeFriece v. McCorguodale, 998 So.2d 465 (Ala.2008); Bruce v. Cole, 854 so.2d [So.2d] 47 (Ala.2003); and Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691 (Ala.2002). Therefore, the Motion for Summary Judgment is due to be granted."
The Uphams appealed.

Analysis
"`The standard of review applicable to a summary judgment is the same as the standard for granting the motion....' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957, 958 (Ala.1992).
"`A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact"evidence of *213 such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala.Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989).'
"Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So.2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So.2d 337, 342 (Ala. 2004)."
Alabama Elec. Coop. v. Bailey's Constr. Co., 950 So.2d 280, 283 (Ala.2006).
Section 8-9-2, Ala.Code 1975, provides, in part:
"In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
"....
"(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."
This Court has stated "that a contract for sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it can be identified without resort to oral evidence." Goodwyn v. Jones, 288 Ala. 71, 75, 257 So.2d 320, 323 (1971).
It is undisputed that the Uphams had not yet paid any purchase money and were not in possession of any land contemplated under the April 22 contract. Accordingly, the exclusion described in § 8-9-2(5) does not apply. The April 22 contract is, therefore, void unless it describes the land to be sold "with such certainty that it can be identified without resort to oral evidence." Goodwyn, 288 Ala. at 75, 257 So.2d at 323. The April 22 contract identifies the land to be sold only as "at least 5 acres" "adjacent to 296 West Shugart Ridge." At her deposition, Martha Nix admitted that, from this language, "there's no way you can" locate the land to be sold under the April 22 contract. Instead, she referenced "an understanding of where [the Uphams] were told the five acres would be." (Emphasis added.) The Statute of Frauds, however, requires that the land be identified in writing. The April 22 contract does not "describe the land with such certainty that it can be identified without resort to oral evidence." Goodwyn, 288 Ala. at 75, 257 So.2d at 323. As a result, it is void unless some exception to the Statute of Frauds applies.
On appeal, the Uphams argue that two exceptions to the Statute of Frauds apply. They argue that the April 22 contract is not subject to the Statute of Frauds because, they allege, the April 22 contract was fraudulently induced and because, they say, the April 22 contract provides a key to or a means of identifying the land. We will consider the second exception first.
In Goodwyn, supra, this Court stated: "[A] general description may be made specific and certain by parol evidence and concurrent facts and circumstances sufficient to that end." 288 Ala. at 75, 257 So.2d at 323. As to the "test for sufficiency," this Court, quoting Annotation, Statute of Frauds-Description of Land, 23 A.L.R.2d 6, 12-13 (1952), stated: "`[D]oes the writing furnish the means of identification, or, as some cases have it, does it provide the `key' to the identification, the *214 applicable principle being that that is certain which can be made certain....'" 288 Ala. at 76, 257 So.2d at 323. This Court applied this exception to the facts in Goodwyn, stating:
"In the instant case, each complainant was occupying a certain area of land within the 34 acres. The lines of the occupancy were impressed by cleared land and improvements. Respondent elected by adoption of an instrument prepared by L & N to offer each complainant the opportunity to purchase this occupied area upon payment of a sum set forth in the offer. Each complainant was in possession of only one occupied area within the 34 acres. Respondent designated the area to be purchased, namely the occupied area. We think it was permissible to identify the occupied area by competent evidence, and that the respondent, having elected to designate the area by a general term, cannot now complain against evidence to establish by metes and bounds, or other description, the occupied area."
288 Ala. at 77, 257 So.2d at 325 (emphasis added).
In Mullinax v. Galen-Marshall, Inc., 642 So.2d 431 (Ala.1994), this Court applied the same exception but with a different result. Quoting the trial court's factual findings, this Court stated:
"`It is undisputed from the documents filed, and the testimony presented, that the alleged contract or contracts do not contain any legal description. The only reference in either written document is "see legal description." There is revealed in the depositions, the fact that the parties had not been able to settle on a legal description.'"
642 So.2d at 432. In fact, the parties had considered two different legal descriptions that did not correspond. Based on those facts, this Court in Mullinax distinguished Goodwyn, stating:
"[In Goodwyn, the Court] concluded that the description, although stated in general terms, was sufficient, where each purchaser was offered the area on which he residedan area that was well demarcated and recognized....
"The instruments involved in this case, however, are not so directly linked to clearly established facts and circumstances that the description of the property can be `made certain.' ...
"....
"It is undisputed that the instruments involved in this case do not describe the property to which they refer. More significantly, the `legal description' referenced in the instruments could refer to either of two parcels of significantly different dimensions...."
642 So.2d at 433-34 (emphasis omitted; emphasis added). This Court, therefore, concluded: "The instruments, themselves, do not `provide the key' to identification of the subject property." 642 So.2d at 435.
In this case, the Uphams contend, based on the language in the addendum, that the survey contemplated by the addendum "is the key" that satisfies the exception stated in Goodwyn and Mullinax. Specifically, they argue that the Wicks and Oldfield "admitted at their depositions that a surveyor could go out and fulfill the contractual requirements of surveying and rezoning the acreage to the left of the house, including the 40 feet of road frontage, and sell the land to" the Uphams. (Uphams' principal brief, at 20 (emphasis added).) The wicks and Oldfield, however, correctly note that the survey relied on by the Uphams does not yet exist and did not exist at the time the April 22 contract was executed. The exception stated in Goodwyn and Mullinax allows a general description *215 to be made certain by "concurrent facts and circumstances." Goodwyn, 288 Ala. at 75, 257 So.2d at 323 (emphasis added). The general description of the property referenced must be capable of being made certain at the time the parties contracted. Reference to a description not yet in existence cannot bring the April 22 contract within the exception.
Additionally, as in Mullinax, the language of the April 22 contract does not sufficiently identify the land to be sold; indeed, the April 22 contract does not describe the land to be sold. The only identification of the land in the contract could refer to any number of "at least" five-acre configurations of the land adjacent to the property located at 296 West Shugart Ridge. Furthermore, from the deposition testimony of Skip Wick and Martha Nix, it is apparent that the land discussed by the Wicks and the Uphams was described in terms of potential boundary lines; the parties had not settled on any "area that was well demarcated and recognized." Mullinax, 642 So.2d at 433-34. Therefore, unlike the instrument in Goodwyn, the April 22 contract is "not so directly linked to clearly established facts and circumstances that the description of the property can be `made certain.'" Mullinax, 642 So.2d at 433. Accordingly, the April 22 contract does not "furnish the means of identification," Goodwyn, 288 Ala. at 75, 257 So.2d at 323, of the land to be sold, and the Uphams have not shown that the April 22 contract falls within this exception to the Statute of Frauds.
To support their argument that the April 22 contract falls within an exception to the Statute of Frauds relating to fraud in the inducement, the Uphams rely on the following language from Darby v. Johnson, 477 So.2d 322, 325 (Ala.1985):
"`"It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme." 2 Pomeroy, Eq. Jur. (3d Ed.) § 921, p. 1658.'
"Deming [v. Lee], 174 Ala. [410,] 414, 56 So. [921,] 922 [(1911)]. Furthermore, `[e]quity will not permit a party to retain property, obtained on the faith of a verbal contract, to consummate a fraud by retaining the property and refusing to perform the contract.' (Emphasis in original.) (Citations omitted.) 174 Ala. at 419, 56 So. at 924."
Based on this language and citing the fact that Skip Wick did not own the property adjacent to 296 West Shugart Ridge, the Uphams argue that the Wicks engaged in fraud by attempting to sell land that they did not own outright. They do not address or cite authority regarding the specific elements of fraud.
Nonetheless, this Court in DeFriece v. McCorquodale, 998 So.2d 465 (Ala.2008), in considering an argument identical to the argument raised by the Uphams, recognized that Darby v. Johnson has been impliedly, though not expressly, overruled. In DeFriece, an opinion authored by Justice Stuart, certain heirs of their father's estate transferred real property they had inherited from him to their mother to avoid adverse tax consequences of the inheritance. They did so upon the oral agreements of their mother and brother that the property would later be divided equally among the siblings. The mother subsequently died, leaving the bulk of the property to the brother. The remaining siblings sued seeking enforcement of the oral agreement, and the trial court entered *216 a summary judgment against them. On appeal, this Court discussed the siblings' argument that the Statute of Frauds did not bar their enforcement of the oral agreement because, they maintained, it was based in fraud. This Court stated:
"DeFriece and Durst argue ... that the Statute of Frauds applies only to promises and representations that are part of contractual agreements. De-Friece and Durst argue that the misrepresentations allegedly made by [their brother and mother] were not `contractual in nature'; rather, they were simply fraudulent statements that now support claims of promissory fraud. In Bruce v. Cole, 854 So.2d 47, 58 (Ala.2003), this Court considered the relationship between breach-of-contract claims and promissory-fraud claims insofar as the Statute of Frauds is concerned and, after overruling a previous line of cases, held that `an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud.' Thus, regardless of whether the misrepresentations allegedly made by [the brother and the mother] are viewed as contractual in nature or as simply fraudulent, they are subject to the Statute of Frauds because they concern the conveyance of an interest in land.
"In a related argument, DeFriece and Durst argue ... that the Statute of Frauds is inapplicable if fraud occurred during the inception of an agreement. In support of this argument, DeFriece and Durst cite the following passage from Leisure American Resorts, Inc. v. Knutilla, 547 So.2d 424, 427 (Ala.1989):
"`It is a well-established principle that equity will intervene and render the Statute of Frauds defense inapplicable in a contract action
"`"even though the part performance requirement is not met, when fraud operates from the beginningthat is, when the breaching party procured the land ... with no intent to perform the oral agreement admitted to have been made."
"`Darby v. Johnson, 477 So.2d 322, 326-27 (Ala.1985).'
"We did not, in Bruce, include Leisure American Resorts or Darby v. Johnson, 477 So.2d 322 (Ala.1985), in the list of cases that were being overruled; however, our holding that an oral promise that is void by operation of the Statute of Frauds will not support an action for promissory fraud ultimately had that effect.2 Bruce stands for the proposition that a party may not avoid the effect of the Statute of Frauds by framing the claim as one alleging promissory fraud or by invoking the historical fraud-in-the-inception exception to the Statute of Frauds. Accordingly, DeFriece and Durst's argument in this regard is foreclosed by our holding in Bruce.

"____________
"2 We did in Bruce expressly overrule Hinkle v. Cargill, Inc., 613 So.2d 1216, 1220 (Ala.1992), in which this Court had stated:
"`[The appellee] argues that a fraud action cannot be based on the breach of an unwritten contract that is void under the Statute of Frauds. As the above-cited authorities show, however, the Statute of Frauds does not bar proof of a fraud committed by means of a promise that ordinarily could not be enforced as a contractual promise because of the Statute of Frauds. Furthermore, "it is well settled in Alabama that fraud may be predicated upon a breach of contract which is void, because not in writing, where the contract was made for the purpose of *217 perpetrating the fraud." Caron v. Teagle, 408 So.2d 494, 496 (Ala.1981).'
"Among the `above-cited authorities' referred to in this passage is Darby v. Johnson, 477 So.2d 322 (Ala.1985), upon which Leisure American Resorts relied."
998 So.2d at 470-71 (emphasis added).
In Holman v. Childersburg Bancorporation, Inc., 852 So.2d 691 (Ala.2002), an opinion authored by Justice Woodall that predates DeFriece, this Court concluded that an oral agreement to release a mortgage lien was void under the Statute of Frauds and then addressed the validity of the plaintiff's tort claims, stating:
"As a general rule, `[i]f the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery.' Pacurib v. Villacruz, 183 Misc.2d 850, 861, 705 N.Y.S.2d 819, 827 (N.Y.Civ.Ct.1999) (emphasis added); see also Dwight v. Tobin, 947 F.2d 455, 460 (11th Cir.1991); McDabco, Inc. v. Chet Adams Co., 548 F.Supp. 456, 458 (D.S.C.1982) (it is a `well accepted doctrine that one cannot circumvent the Statute of Frauds by bringing an action in tort, when the tort action is based primarily on the unenforceable contract'); Weakly v. East, 900 S.W.2d 755 (Tex.Ct.App.1995). This is so, because, `[i]f a plaintiff was allowed to recover the benefit of a bargain already barred by the statute of frauds, the statute of frauds would become meaningless.' Sonnichsen v. Baylor University, 47 S.W.3d 122, 127 (Tex.Ct. App.2001). `Thus, the statute of frauds bars a [tort] claim when a plaintiff claims as damages the benefit of the bargain that he would have obtained had the promise been performed.' Id. (emphasis added).
"....
"In accord with the general rule, we hold that where, as here, an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support the tort claim. Were the rule otherwise, the Statute of Frauds could be effectively avoided by the simple wording of the complaint."
852 So.2d at 699-701.
Subsequently, in Bruce v. Cole, 854 So.2d 47 (Ala.2003), discussed in DeFriece, above, in an opinion authored by Justice Johnstone, this Court engaged in a lengthy analysis of an oral agreement to transfer stock. Regarding the Statute of Frauds, this Court examined its previous decision in Holman and then stated:
"[T]he Statute of Frauds identifies defined categories of oral promises that are especially subject to fabrication and especially unworthy of reliance or enforcement. Therefore, for the courts, on a theory of promissory fraud, to countenance a plaintiff's claim that he has relied on such a promise and to redress that plaintiff's claim that he has suffered from the breach of such a promise, defies the policy and frustrates the efficacy of the Statute of Frauds.
"Therefore, applying the legal reasoning of Holman, supra, this Court now holds that an oral promise that is void by operation of the Statute of Frauds will not support an action against the promisor for promissory fraud. The cases of US Diagnostic v. Shelby Radiology, P.C., 793 So.2d 714 (Ala.2000), Wilma Corp. v. Fleming Foods of Alabama, Inc., 613 So.2d 359 (Ala.1993), Hinkle v. Cargill, Inc., 613 So.2d 1216 (Ala.1992), Dean v. Myers, 466 So.2d 952 (Ala.1985), and Caron v. Teagle, 408 *218 So.2d 494 (Ala.1981), are overruled to the extent, but only to the extent, that they conflict with this holding."
854 So.2d at 58. As quoted above, this Court in DeFriece subsequently concluded, based on Bruce, that the fraud-in-the-inducement argument advanced in Darby was no longer valid. The trial court in this case expressly relied on DeFriece, Bruce, and Holman in entering a summary judgment for the Wicks and Oldfield.
On appeal, the Uphams do not, as they did below, argue that this Court overruled Darby only to the extent that it related to promissory fraud; they have, therefore, abandoned that argument on appeal. The Uphams instead contend that this Court has erred in rejecting the fraud-in-the-inducement exception to the Statute of Frauds. In their principal brief, the Uphams state:
"To allow the [Wicks and Oldfield] to now hide behind the Statute of Frauds to consummate their fraudulent conduct would be tantamount to state-sponsored fraud. This is why the Alabama Supreme Court had adopted and developed the historic fraud-in-the-inception exception to the Statute of Frauds. The present case illustrates the folly of the Bruce Court for casting aside stare decisis and replacing decades, if not centuries, of sound, nuanced judicial reasoning with an intellectually lazy, blunt and unjust `strict constructionist' interpretation to the Statute of Frauds."
(Uphams' principal brief, at 15.) And in their reply brief, the Uphams state: "The [Uphams] respectfully assert that the Court blew it in DeFriece, Bruce, and Holman, by whitewashing with broad brush strokes a tapestry of well-settled laws and decisions that took into account the facts of each individual case and equity." (Uphams' reply brief, at 5-6.)
Construing this language broadly as a request to overrule DeFriece, Bruce, and Holman, we decline to do so. This Court's decisions in those cases were thorough and well reasoned. The Uphams do not discuss the legal reasoning of the decisions; they have not offered any alternative reasoning that this Court could adopt; and they have not shown how the decisions are in error except to state that this Court "blew it" and that the decisions, which they call "intellectually lazy," encourage fraud and are "unjust." The Uphams, therefore, have not provided a sufficient basis upon which we could, even if we were so inclined, overrule DeFriece, Bruce, and Holman.
The Uphams alternatively argue that DeFriece, Bruce, and Holman are distinguishable from the present case in that, unlike the agreements in those cases, the April 22 contract they seek to enforce was a written agreement, not an oral agreement; that Skip Wick did not own the land he agreed to sell in the April 22 contract; and that the material facts are undisputed. However, none of these distinguishing characteristics is material. The Statute of Frauds voids both written contracts with insufficient descriptions of land and oral agreements to sell land. See Goodwyn and Mullinax, supra. Additionally, the fact that Skip Wick did not own the property adjacent to 296 West Shugart Ridge is merely the basis for the Uphams' fraud-in-the-inducement claim. That fact does not remove this case from material holding of DeFriece, Bruce, and Holman: this Court's abandonment of the fraud-in-the-inducement exception to the Statute of Frauds. Likewise, the Uphams' assertion that the alleged fraudulent inducement is not disputed does not alter this Court's abandonment of those facts as an exception to the Statute of Frauds. The Uphams, therefore, have not shown that this *219 case is materially distinguishable from DeFriece, Bruce, and Holman.
Accordingly, this Court has rejected the fraud-in-the-inducement exception to the Statute of Frauds, and, as in DeFriece, we conclude that the Uphams' "argument in this regard is foreclosed by our holding in Bruce." 998 So.2d at 471.
The Uphams raise several other arguments in their brief on appeal. Specifically, they contend that their rescission claim did not arise from the April 22 contract; that the Statute of Frauds does not bar their tort claims; that their fraud claims are not based on promissory fraud; and, in the alternative, that they have satisfied the elements of promissory fraud. The Uphams, however, do not cite authority to support any of these arguments.
This Court has stated:
"Rule 28(a)(10), Ala. R.App. P., requires that arguments in an appellant's brief contain `citations to the cases, statutes, other authorities, and parts of the record relied on.' Further, `it is well settled that a failure to comply with the requirements of Rule 28(a)(10) requiring citation of authority in support of the arguments presented provides this Court with a basis for disregarding those arguments.' State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 822 (Ala.2005) (citing Ex parte Showers, 812 So.2d 277, 281 (Ala.2001)). This is so, because `"it is not the function of this Court to do a party's legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument."' Butler v. Town of Argo, 871 So.2d 1, 20 (Ala. 2003) (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))."
Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007). Because the Uphams have not complied with the requirements of Rule 28(a)(10), Ala. R. Civ. P., as to those issues, we will not consider their arguments related to them.

Conclusion
Based on the foregoing, we affirm the trial court's judgment because the Uphams have not shown that the trial court erred in entering a summary judgment against them on all of their claims against the Wicks and Oldfield.
AFFIRMED.
COBB, C.J., and WOODALL, STUART, SMITH, BOLIN, PARKER, and SHAW, JJ., concur.
MURDOCK, J., dissents.
MURDOCK, Justice (dissenting).
In Darby v. Johnson, 477 So.2d 322, 325 (Ala.1985), this Court observed the following time-honored principles of equity:
"`"It is a most important principle, thoroughly established in equity, and applying in every transaction where the statute is invoked, that the statute of frauds, having been enacted for the purpose of preventing fraud, shall not be made the instrument of shielding, protecting, or aiding the party who relies upon it in the perpetration of a fraud, or in the consummation of a fraudulent scheme." 2 Pomeroy, Eq. Jur. (3d Ed.) § 921, p. 1658.'
"Deming [v. Lee], 174 Ala. [410,] 414, 56 So. [921,] 922 [(1911)]. Furthermore, `[e]quity will not permit a party to retain property, obtained on the faith of a verbal contract, to consummate a fraud by retaining the property and refusing to perform the contract.' ... (Citations omitted.) 174 Ala. at 419, 56 So. at 924."
(Emphasis omitted; emphasis added.)
I am concerned that there are indeed nuances and or distinctions that we have *220 overlooked in some recent decisions, including the decision today, regarding the availability of relief when one has been the subject of a fraud committed by means of a promise to which the Statute of Frauds is applicable.[1] Are we not enabling fraudulent actors to commit fraud so long as they use certain types of oral promises? Are we not writing out of our law the time-honored maxims quoted above?
Clearly, one cannot enforce the contractual promise itself that is made in contravention of the Statute of Frauds. But if that promise is made fraudulently so as to induce another to give for it something of value, why should the promisee not at least be able to retrieve from the dishonest promisor that which has been given in exchange for the promise, or its equivalent? Such an outcome would only put the parties back in their original positions. It would do no violence to the policy underlying the Statute of Frauds, which, as it relates to land, is to guard against a party's being forced to convey his or her land to another if he or she has not in fact promised to do so.
In this case, if the Uphams can prove that the Wicks defrauded them by making false representations regarding the ownership of land, or false promises to convey it, and thereby induced the Uphams to enter into and consummate a separate agreement to buy the Wicks' home, why shouldn't the Uphams at least be able to rescind the home-sale transaction and thereby retrieve that which they gave in reliance upon, or in return for, the fraudulent representations or promises?
NOTES
[1] In DeFriece v. McCorquodale, 998 So.2d 465 (Ala.2008), for example, it appears that the promise to reconvey the land in question was part of an illegal, sham arrangement to avoid taxes and therefore should not have been actionable in any event.