Rel: June 13, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2024-2025

––––––––––––––––––––––

## CL-2025-0039

––––––––––––––––––––––

### Carolyn Ransby

v.

### Eric Moore, as administrator of the Estate of Margaret G. Moore, deceased

### Appeal from Choctaw Circuit Court
### (CV-22-900043)

MOORE, Presiding Judge.

This appeal arises from a judgment entered by the Choctaw Circuit Court ("the trial court") declaring a contract for the sale of land to be void for violating Ala. Code 1975, § 8-9-2(5), a part of the Statute of Frauds, Ala. Code 1975, § 8-9-2. We conclude that the trial court erred in

determining that the description of the land was not specific enough to satisfy the Statute of Frauds. We reverse the judgment and remand the case with instructions to the trial court.

## Background

In 1979, Velma Coody executed a deed conveying a parcel of real property ("the property") to Margaret G. Moore; the description of the property was set forth as follows:

"TOWNSHIP 10 NORTH, RANGE 3 WEST

"SECTION 7 Begin at the Northwest corner of the NE 1/4 of NW 1/4 of said Section 7; thence go South along the West boundary of said quarter-quarter section for a distance of 191 feet and to Mill Creek; thence go along Mill Creek with its meanders in a Southeasterly direction for a distance of 200 feet to the point of beginning of the tract herein conveyed; thence go North 2° 15' East for a distance of 60 feet; thence go South 88° 15' East for a distance of 350 feet; thence go South 2° 15' West for a distance of 225 feet and to Mill Creek; thence go in a Northwesterly direction along said Mill Creek with its meanders to the point of beginning, being 1.2 acres, more or less."

The property described was located at 22 Mustang Drive in Gilbertown. Margaret subsequently installed a mobile home on the property, and she used the property and the mobile home as her residence.

On April 30, 2004, Margaret executed a written agreement with Carolyn Ransby. The 2004 agreement provides, in pertinent part:

"Agreement.

"Account # 00037313750, 1997 Fleetwood (28 x 66) FL FLV79A/B1300-1HE21 I leave my house, 2 ½ acre land, well located on 22 Mustang Drive,

"Agree, when paid off IN FULL transfer DEED in Carolyn Ransby name,

"INSURANCE IN Carolyn Ransby, if flood, fire, theft all money goes to Carolyn Ransby, once payment of $1,515.34 the home belong to Carolyn Ransby, Ms. Margaret G. Moore has no more right, if Ms. Margaret [G.] Moore should die before home is paid for, family member cannot brake [sic] this agreement if Carolyn Ransby should die before home is paid for my children shall have the right to keep the home .... All rights to home belong to Carolyn Ransby, I agreet [sic] to all right."

At the time of the execution of the 2004 agreement, which was signed by two witnesses and notarized, Ransby paid Margaret $1,515.34.

Margaret continued to reside on the property after the execution of the 2004 agreement. On February 23, 2015, Margaret signed a notarized document in which she stated that she was leaving the property to Eric Moore, her grandson; however, Margaret apparently did not execute a formal last will and testament.

Margaret died on March 31, 2019. On April 11, 2019, Ransby filed the 2004 agreement in the Choctaw Probate Court. On June 11, 2020, Ransby executed a quitclaim deed of the property to herself; the quitclaim

deed contained the legal description of the property as set forth in the 1979 deed and was recorded in the Choctaw Probate Court. At some point, Ransby assumed possession of the property. Subsequently, the Choctaw Probate Court appointed Eric to be the administrator of Margaret's estate.

On August 15, 2022, Eric filed a complaint against Ransby. In the complaint, Eric alleged that Ransby "has no title nor color of title enabling her to execute a deed to herself purporting to 'clear up' any title issue" and that "[Ransby] has committed fraud against the Estate of Margaret G. Moore by recording a deed to the property owned by the Estate of Margaret G. Moore and unilaterally taking possession of said property." Eric requested that the quitclaim deed be stricken and that the trial court enter a judgment declaring that title to the property was vested in the estate. On October 5, 2022, Ransby filed an answer generally denying the allegations in the complaint.

On June 27, 2024, the trial court conducted a bench trial. Eric testified that he had lived on the property until approximately 2010. He recalled that, in 2004, Ransby had given Margaret money to pay off the balance of a loan on a mobile home. Eric reviewed the 2004 agreement

4

and testified that the agreement memorialized the transaction between Margaret and Ransby. Eric testified that the 2004 agreement did not contain a legal description of the property, and, he said, Margaret had not owned 2.5 acres of land located at 22 Mustang Drive as referenced in the 2004 agreement. Eric testified that, at one time, he had believed that the property consisted of 2.25 acres of land, but, he said, he had later determined from the legal description that the property was comprised of only 1.2 acres. Eric said that, after Margaret died, Ransby had continued the electric service to the mobile home located on the property and had continued cutting the grass at 22 Mustang Drive. Eric testified that he also believed that someone had removed the porch from the mobile home. Eric said that Ransby had not filed a claim to the property against Margaret's estate and that the quitclaim deed that she had recorded had hindered his ability to sell the property.

Ransby testified that, in 2004, she was residing in Miami, Florida, but she was planning on moving to Gilbertown. According to Ransby, Margaret approached her about purchasing the property and a mobile home that was located on the property. Ransby testified that, at that time, the mobile home was in "Grade D" condition. Eventually, Ransby

5

said, she and Margaret had agreed that Ransby would purchase the property for $1,515.34. On April 30, 2004, Margaret and Ransby went to a local bank, drew up the 2004 agreement, and had bank employees witness and notarize the document. Ransby testified that she had paid Margaret $1,515.34 in cash on the same date.

Ransby did not take immediate possession of the property. Within a month of the 2004 agreement, Ransby moved into a mobile home located at 43 Mustang Drive, near the property, where she has since resided. Ransby testified that she told Margaret she could live on the property until she died because Margaret was poor and had no help. Ransby said that Margaret had lived on the property until her death. After Margaret died, no one moved onto the property. Ransby testified that a storm had blown the roof off the porch of the mobile home located on the property. Ransby testified that she had intended to fix the porch but that she had not done so. A restraining order was entered by the trial court to prevent the parties from changing the condition of the mobile home. Ransby had nevertheless cut the grass to maintain community standards, and she maintained that she owned the property pursuant to the 2004 agreement.

On August 21, 2024, the trial court entered a judgment. In the judgment, the trial court determined that the 2004 agreement

> "is not a contract specific enough to satisfy the statute of frauds, as the real estate allegedly conveyed in the said contract is not particularly described.'"A contract for the sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it can be identified without resort to oral evidence.["'] Nix v. Wick, 66 So. 3d 209, 213 (Ala. 2010) [(quoting Goodwyn v. Jones, 288 Ala. 71, 75, 257 So. 2d 320, 323 (1971))]."
>
> "The Court further finds that the 'Quitclaim Deed' from Carolyn Ransby to Carolyn Ransby, recorded at deed book 378 at page 520, is null and void as Carolyn Ransby had no legal right to attempt to convey the property subject to that deed to herself."

The trial court declared that Margaret's estate owned the property.

On September 11, 2024, Ransby filed a postjudgment motion, arguing that the property was sufficiently described in the 2004 agreement to satisfy the Statute of Frauds and that the 2004 agreement had been fully executed. The postjudgment motion was denied by operation of law on December 10, 2024. See Rule 59.1, Ala. R. Civ. P. Ransby timely appealed on January 17, 2025.

## Analysis

In the proceedings below, Eric sought to set aside the quitclaim deed on the theory that Ransby had not acquired any interest in the

7

property through the 2004 agreement, which, he contended, was unenforceable under the Statute of Frauds. The trial court determined that the 2004 agreement did not satisfy the Statute and Frauds, and, accordingly, that Ransby had no interest in the property that she could have conveyed to herself through the quitclaim deed. We, therefore, review the case to determine whether the 2004 agreement complied with the Statute of Frauds and gave Ransby an interest in the property.

Section 8-9-2 provides, in pertinent part:

> "In the following cases, every agreement is void unless such agreement or some note or memorandum thereof expressing the consideration is in writing and subscribed by the party to be charged therewith or some other person by him thereunto lawfully authorized in writing:
>
> "....
>
> "(5) Every contract for the sale of lands, tenements or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof is paid and the purchaser is put in possession of the land by the seller."

In Nix v. Wick, 66 So. 3d 209, 213 (Ala. 2010), our supreme court recognized "'that a contract for sale of land, to satisfy the statute of frauds, must describe the land with such certainty that it can be identified without resort to oral evidence.' Goodwyn v. Jones, 288 Ala. 71,

75, 257 So. 2d 320, 323 (1971)." However, as a caveat to that rule, "a general description may be made specific and certain by parol evidence and concurrent facts and circumstances sufficient to that end." Goodwyn v. Jones, 288 Ala. 71, 75, 257 So. 2d 320, 323 (1971). According to that caveat, the Statute of Frauds is satisfied if the writing furnishes the key or means of identifying the property at issue with certainty even though the description in the writing itself is not certain. Id. Whether a property description is legally sufficient under that standard is a question of law for the trial court. See Oconee Land & Timber, LLC v. Buchanan, 300 Ga. App. 853, 856, 686 S.E.2d 452, 454 (2009). We review questions of law de novo. See Vestlake Communities Prop. Owners' Ass'n, Inc. v. Moon, 86 So. 3d 359, 365 (Ala. Civ. App. 2011).

Margaret promised in the 2004 agreement to convey to Ransby 2.5 acres of land located at 22 Mustang Drive. Under Goodwyn, that general description was sufficient to allow for additional evidence as to the specific description of the property conveyed. The trial court received evidence, without objection, indicating that, at the time of the execution of the 2004 agreement, Margaret owned only one parcel of real property located at 22 Mustang Drive in Gilbertown. Accordingly, there could not

9

have been any confusion as to the parcel of property referred to in the 2004 agreement. See Apex Fin. Corp. v. Garza, 155 S.W.3d 230, 237 (Tex. App. 2004) ("We have held that a street address or a commonly-known name for property may be a sufficient property description if there is no confusion."). The trial court also received evidence, without objection, of the legal description of the property that Margaret owned at 22 Mustang Drive, which was contained in the 1979 deed. From that evidence, the trial court could have determined with specificity the metes and bounds of the property conveyed; thus, the general description of the property in the 2004 agreement satisfied the Statute of Frauds, and the 2004 agreement was enforceable.

The legal description showed that Margaret owned only 1.2 acres of land at 22 Mustang Drive, not 2.5 acres as set forth in the 2004 agreement. That discrepancy did not render the property description insufficient for the purposes of the Statute of Frauds. "The contract's property description need not be mathematically certain, but only 'reasonably certain' so as to enable a person familiar with the area to identify the property to be conveyed to the exclusion of other property." Anderson Energy Corp. v. Dominion Oklahoma Texas Expl. & Prod., Inc.,

469 S.W.3d 280, 295 (Tex. App. 2015) (quoting Gates v. Asher, 154 Tex. 538, 542, 280 S.W.2d 247, 249 (Tex. 1955)). In Nix, supra, the parties agreed to a transaction involving "at least 5 acres" of land adjacent to a street address, but multiple different areas could have satisfied that description, so the Jefferson Circuit Court determined that the agreement at issue violated the Statute of Frauds. In this case, only one parcel of property was located at 22 Mustang Drive, and it did not exceed 2.5 acres, so the 2004 agreement could not have been referring to any other property.

The trial court erred in concluding that the 2004 agreement violated the Statute of Frauds. That error led the trial court to conclude that Ransby had not acquired any interest in the property that she could convey to herself through the quitclaim deed.[1] However, upon payment of the purchase price, Ransby acquired equitable title to the property and Margaret retained the legal title to the property in trust for Ransby. See Bay Minette Land Co. v. Stapleton, 224 Ala. 175, 139 So. 342 (1932). The

---

[1]The parties did not litigate in the trial court whether a party may be both the sole grantor and the sole grantee of real property in a quitclaim deed, so we express no opinion as to that point.

trial court did not consider that interest when determining the validity of the quitclaim deed or in deciding the ownership of the property.

Conclusion

For the foregoing reasons, we reverse the judgment of the trial court, and we remand the case with instructions that the trial court enter a judgment finding that the 2004 agreement did not violate the Statute of Frauds and for further proceedings consistent with this opinion.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Edwards, Hanson, Fridy, and Bowden, JJ., concur.